IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:22-CR-85 |
| v. | The Hon. Michael S. Nachmanoff |
| DWIGHT DAYMION GARVEY | Sentencing: September 22, 2022 |
| *Defendant*. | |

## GOVERNMENT'S POSITION ON SENTENCING

The defendant, Dwight Daymion Garvey (hereinafter "Garvey"), comes before the Court for sentencing after pleading guilty to his participation in a cocaine trafficking network. The defendant worked his way to success after immigrating to the United States as a teenager: receiving graduating high school, running multiple businesses, and starting a family. Unfortunately, this same entrepreneurial spirit led the defendant to engineer a sophisticated cross-country cocaine distribution scheme for easy money, distributing dangerous narcotics in and around his community and putting the safety of unknowing participants in his scheme at risk. A significant sentence of imprisonment is warranted.

For the reasons set forth herein, the United States respectfully submits that a sentence of 80 months imprisonment—squarely within the applicable guidelines range is appropriate in this case.

### BACKGROUND

The defendant came to the attention of law enforcement on April 27, 2022, the date of his arrest. Just days before, law enforcement had intercepted a vehicle containing approximately 20

kilograms[1] of cocaine in hidden compartments en route via commercial car carrier to the defendant, who used a fake name: "Dante." PSR ¶¶ 25, 26. Law enforcement seized the cocaine and organized an operation to determine the intended recipient of this significant quantity of dangerous controlled substances. PSR ¶¶ 25-38. Once the vehicle arrived on the east coast—filled with sham cocaine unbeknownst to the defendant—Garvey enlisted another participant, his cousin, J.G., to help him pick up his shipment of cocaine. PSR ¶ 27, 31. After the defendant took control of the vehicle containing the sham cocaine, he entrusted his cousin to drive back his other vehicle, which was later found to contain over $58,000 in drug proceeds in yet another hidden compartment. PSR ¶ 31, 38. The defendant was arrested that day, April 27, 2022, in College Park, MD, after he went to retrieve the sham cocaine from the vehicle's hidden compartments. PSR ¶ 37. He was charged and made his initial appearance in this District the following day. On June 2, 2022, the defendant pleaded guilty to conspiracy to possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine.

This attempted acquisition of a conservative $300,000[2] worth of cocaine was, unsurprisingly, not the defendant's first foray into narcotics distribution. Instead, by his own recent admission to law enforcement, by the time of his arrest he has been participating in this scheme for 1-2 years: successfully receiving vehicles containing cocaine for further distribution, and in return sending drug proceeds back to his supplier. After receiving shipments of cocaine, the defendant distributed to lower-level distributors in his network as well as directly to end-users. But Garvey was not simply a distributor: he orchestrated much of the scheme as alleged. Garvey

---

1  Assuming a standard purchase of cocaine by a user is 3.3 grams, this load of cocaine represents over 6,000 potential purchases.
2  Twenty kilograms of cocaine is valued at an approximate range of $300,00 to $600,000 at wholesale prices, and million of dollars once broken down and sold at distribution quantities.

admitted to law enforcement that it was his own ingenuity that generated the idea to use the vehicles bought online and outfitted with hidden compartments to transport and distribute large quantities of cocaine. Through this scheme the defendant and his coconspirators enlisted the help of, and risked danger to the safety and liberty of, multiple participants, including contracted vehicle transport drivers and ultimately the defendant's own cousin, many of whom drove through numerous jurisdictions unknowingly carrying cocaine or drug proceeds. The defendant's scheme was a success and culminated with Garvey receiving his largest shipment yet on April 27, 2022, the day of his arrest.

## SENTENCING ANALYSIS

**I.   Law**

The Court consults both the Sentencing Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine a defendant's appropriate sentence. Although the Sentencing Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph 2 lists four purposes for a sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate

deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition to the purposes of sentencing listed in Section 3553(a)(2), a sentencing court must also consider: (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution. 18 U.S.C. § 3553(a).

**II.   Guidelines Calculation**

The United States has no objection to the Probation Officer's calculations of the defendant's Guidelines, as set forth in the Presentence Investigation Report (PSR) (ECF No. 46) in paragraphs 46–56 and Part D. As is the case with almost all drug offenses, the Guidelines are driven by the applicable drug weight. The base offense level is 32, as stipulated in the plea agreement. PSR ¶¶ 5, 47. The government concurs with the Probation Officer's determination that the defendant meets the "safety valve" criteria under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, therefore, two points are deducted from the offense level, PSR ¶ 48, and the Court is not restricted by the 10-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A). The government further concurs with the Probation Officer's application of the two-level reduction for acceptance of responsibility under § 3E1.1(a), and in accordance with the plea agreement, hereby moves for the additional one-point reduction under § 3E1.1(b). *See* PSR ¶¶ 54–55. The Probation Officer has already accounted for this one-level decrease in its Guidelines calculation. PSR ¶ 55. The

defendant's total offense level of 27 and criminal history category I yields an advisory Guidelines range of 70–87 months. PSR ¶¶ 83–84.

### III. Section 3553(a) Analysis

#### a. Nature and Circumstances of the Offense

Of the sentencing purposes under 18 U.S.C. § 3553(a)(2), of paramount importance is the need for the sentence to reflect the seriousness of the offense. Given the defendant's role combined with the nature and quantity of the controlled substance at issue, this offense was quite serious. The defendant, by his own admissions, took steps to orchestrate the success of a cross-country cocaine distribution network. He purchased cars online to use in furtherance of the scheme, brought those vehicles to body shops to install hidden compartments, and then—along with his conspirators—enlisted unknowing participants to do the riskier work of transporting cocaine and drug proceeds across the jurisdictions of numerous federal district courts.

In addition to the specifics of the defendant's scheme, cocaine is of course a highly addictive controlled substance that has the potential to destroy families, homes, and communities. The widespread abuse of highly pure street cocaine has led to many severe health consequences such as irregular heartbeat, ischemic heart conditions, sudden cardiac arrest, strokes, convulsions, and death.3 The defendant was involved in the distribution of wholesale quantities of this high-grade poison.

#### b. History and Characteristics of the Defendant

This serious offense, however, is properly viewed in the context of the defendant's background and characteristics. The defendant has no criminal history and by his account reflected

---

3 DEA, Cocaine Drug Fact Sheet, *available at* https://www.dea.gov/sites/default/files/2020-06/Cocaine-2020_1.pdf.

in the PSR, had a difficult childhood in which he spent a large span of his formative years under the care of extended family while his mother worked in the United States to provide for her children. After his own immigration to the United States as a teenager, much of defendant's adulthood is a story of success and hard work: he graduated high school, received a technical degree, became a naturalized citizen, frequently held multiple jobs, started a family, and owned and operated two businesses. Most recently, the defendant started a U.S. business distributing Jamaican pastries, a high-profit industry.

While the defendant's successes through honest work are to be praised, he ultimately succumbed to the lure of quick and easy money selling highly addictive cocaine. When the defendant began his cocaine distribution, he did not need to sell drugs to survive. Instead of continuing in his path of hard work, the defendant used his entrepreneurial spirit and business acumen to develop a sophisticated plan to traffic large quantities of cocaine in hidden vehicles. The success of this new venture is shown by the over $350,000 worth of cocaine and proceeds found in the defendant's possession on but one day of this conspiracy.

    c. **Deterrence**

In light of the defendant's apparent motivation, it is also important to send a message of deterrence not only to this defendant, but to all those who would seek to profit from dealing dangerous drugs: such conduct will not be tolerated and will result in a significant sentence of incarceration.

## CONCLUSION

For the reasons stated herein, the United States submits that a sentence of imprisonment of 80 months is sufficient but not greater than necessary to satisfy the sentencing factors in Section 3553(a) in this case.

                                              Respectfully submitted,

                                              Jessica D. Aber
                                              United States Attorney

By:       /s/
                Heather D. Call
                Assistant United States Attorney

## CERTIFICATE OF SERVICE

      I hereby certify that on September 15, 2022, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to counsel of record in this case; and I will further forward an electronic copy to the United States Probation Officer assigned to the case.

                                        /s/
                           Heather D. Call
                           Assistant United States Attorney
                           Eastern District of Virginia
                           2100 Jamieson Avenue
                           Alexandria, Virginia 22314
                           Tel: (703) 299-3700
                           Fax: (703) 299-3982
                           heather.call@usdoj.gov